### STOWELL et al. v. CLARK et al.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

SALES—CONTRACT—INSURANCE—OPTION TO RESELL—TITLE.

Where plaintiffs paid a portion of the purchase price, and took possession of certain personal property, under agreement that, after a certain time, they would pay the balance, or would resell and reconvey the property to the seller, they took absolute title, and assumed all risks, and on loss by fire were entitled to collect insurance under a policy taken out by them conditioned that it was void unless the interest of the insured in the property was other than sole and unconditional.

Merwin, J., dissenting.

Appeal from trial term, Broome county.

Action by John E. Stowell and others against Milton Clark and John W. Fitzgerald, as attorneys in fact of the Brewers' & Malsters' Fire Insurance Underwriters. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, KELLOGG, and MERWIN, JJ.

M. E. Driscoll, for appellants.

Alex. Cumming, for respondents.

PARKER, P. J. On June 20, 1896, the plaintiffs procured from the defendants a policy of insurance for $1,500 upon certain machinery, stock, and other personal property used by them in the manufacture of sleds. On December 5, 1896, the property so insured was destroyed by fire, and this action is brought to recover upon such policy for the loss so sustained. There is a provision in the policy that, "if the interest of the insured" in the property insured "be other than unconditional and sole ownership," the entire policy shall be void, and the defense set up is that the insured had not such an ownership or interest in the property, either at the taking out of the policy or at the time of the fire. The plaintiffs acquired whatever interest they had in the property by a written contract from Brooks and Lally, dated May 2, 1896; and the question presented upon this appeal is whether, under such contract, the plaintiffs acquired such an interest as the policy required them to have. The contract is somewhat long, and an

exceedingly ambiguous one, when an attempt is made to fix the rights of the parties under it. It is too long to attempt an extended analysis of it in an opinion. It is sufficient to say that, in our judgment, the intent of the parties was that the vendees should take the sole and absolute ownership of the·property, with the privilege, however, of reselling the same on the 1st day of February, 1897. It seems clear that the general scheme of the instrument is as follows: The vendees were not disposed to go into the business until they had had an opportunity to test it by actual experiment, and thus discover whether or not it was likely to prove profitable. To that end, it was arranged that they might take the whole property, and carry on the business, practically at the expense of the vendors in case the business itself did not pay, until February 1, 1897,—a period of some nine months. At the end of that period, if the purchasers conclude to not go on with the business, the vendors agree to take back the·property, and refund what has been paid them. If the purchasers conclude to go on, then the balance of the purchase price agreed upon, over and above what had been paid, was to be paid in the manner therein particularly specified.

. If the provisions for carrying out this scheme had been that the property was valued at $6,200; that the vendees might pay $2,500 down, and take it into their possession for the purpose of such a test, and then might, if they so desired, elect to go on with the purchase, and pay the rest of the purchase price, in the manner provided in this contract; or that they might decline to go on with the business, and in that event the vendees would take back the property, and refund the $2,500,—I am of the opinion that the vendees would not then have taken the absolute ownership of the property. Under such a condition, their duty towards the vendors would be to carefully and prudently manage and care for the plant, and use up and replace the stock to the extent allowed by the contract, until their election was made. If, in the meantime, the property was destroyed by fire, without the fault or neglect of the vendees, it would seem clear that they would be under no obligations to elect to keep the same at the expiration of the test. The loss would be the vendors'. But the agreement in this contract is quite different. First, the vendors do then and thereby sell, grant, and transfer the property to the vendees. True, it is subject to the agreements thereinafter contained, but that is none the less a present change of title to the property being sold. Then, the vendees agree to purchase it for the $6,200, and to pay down $2,500 on the execution of the agreement. Then, after arranging how the business shall be carried on until the 1st of February, 1897, for the purpose of the test, the vendees are given the option and right to "discontinue the business, and resell the property" to the vendors, who agree, in that event, to pay back the $2,500 received. In another part of the contract it is provided that, in the event that the vendees reconvey the property, the balance of the purchase price shall be deemed satisfied, and no longer an obligation.

It is to be noticed that this agreement raises very different obligations from one that allows the vendees to then elect whether they will take the property at the end of the test. .Here the vendees are recog-

nized as having the title to the property. They must not only elect not to go on with the business, but they must reconvey to the vendors, before they can ask for a return of the $2,500, or a discharge from their obligation to pay the remainder of the purchase price; and, if they must reconvey, it would seem that they must deliver to the vendors. Thus, in the event of a destruction of the property during the test, it would be no excuse that it occurred without their fault. They have assumed, in this contract, to convey if they elect to resell, and so have assumed all loss that may in the meantime occur.

So, also, if, after the property was destroyed, the vendees should claim that they would not exercise their option to resell, they must, in that event, pay the balance of the purchase price; and inasmuch as, by reason of the destruction of the property, such balance of $3,700 cannot be adjusted as by the agreements in the contract contained, viz. by proceeding with the business, and "conveying" to the vendors a quarter interest therein, and "in the assets thereof," the vendees must pay the $3,700 in cash. Or the vendees may, of course, replace, at their own expense, the property destroyed, and pay such $3,700 by the "conveyance of the one-fourth interest above stated." In this assumption that the vendees were allowed, under the contract, to pay the $3,700 by conveying a one-fourth interest in the assets and business, in the event that they continued the business, I have followed the construction which both parties before us agree upon. Inasmuch as it makes no difference, in the conclusion which I have reached, whether the one-fourth interest was to satisfy the $3,700 or be in addition to it, I do not attempt to now decide that question. In either event, it seems to me, from the language which the parties adopted, that the obligation was imposed upon the vendees of assuming all loss from a destruction of the property during the test; and, that being so, I am of the opinion that, under this contract, they had acquired the unconditional and sole ownership of it, within the meaning of the policy. The errors of which the appellants complain, in the admission of evidence during the trial, do not seem to be of such a character as to affect the conclusion reached by the court.

I am of the opinion, therefore, that the judgment should be affirmed, with costs. All concur, except MERWIN, J., who dissents.